**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Danny Ray Morris, | No. CV-20-0322-TUC-JAS (EJM) |
|       Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| David Shinn, *et al.*, | |
|       Respondents. | |

Currently pending before the Court is Petitioner Danny Ray Morris's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 1).  Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 16) and Petitioner replied (Doc. 18).  The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation.  The Magistrate Judge recommends that the District Court excuse the untimeliness of the Petition (Doc. 1), but deny it due to the claims being procedurally defaulted or non-cognizable on habeas review.

. . .

. . .

. . .

. . .

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.    *Initial Charge, Trial, and Sentencing*

The Arizona Court of Appeals stated the facts[2] as follows:

> In February 2014, after being arrested with a backpack containing marijuana, A.H. informed Cochise County Sheriff's detectives she had been at Morris's house the previous day to deliver water for "undocumented alien drug mules" on the property.  While there, she had seen "8-10 bundles of marijuana" in the house, and Morris had cut the marijuana in her backpack from one of those bundles.  A.H. also said Morris had received the bundles of marijuana on the property after they were dropped there by "an ultra light air craft," although it is unclear whether she personally witnessed the delivery or heard about it from Morris.  A.H. also mentioned having "seen a handgun at the house" and that Morris had traded marijuana in exchange for a vehicle, without stating when either incident had occurred or how she knew about the latter.  The record does not reflect precisely when the interview took place or how long it lasted, but it was evening by the time A.H. left the police substation.

> Based on the information A.H. provided, along with three outstanding warrants for Morris's arrest, including one for failure to appear on marijuana and paraphernalia charges, Detective Hudson contacted Justice of the Peace Timothy Dickerson about submitting a search warrant application via fax.  Judge Dickerson swore in the detective by telephone and reviewed the faxed affidavit and warrant, ultimately signing the warrant and emailing it back.  Detective Hudson's "supervisors and the powers that be" then decided to utilize a SWAT team to conduct and serve the warrant, but there was not enough time remaining in the day "to have all of the resources brought in before the 10:00 p.m. . . . time-frame for a daytime search."  Hudson again contacted Judge Dickerson about changing the warrant to a nighttime search, to which the judge agreed.

Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision at 78–79[3]

---

[2] The appellate court noted that "[i]n reviewing a motion to suppress, we consider only the facts presented to the trial court at the suppression hearing, viewing those facts in the light most favorable to upholding the court's ruling."  Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision at 78 (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2).  As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings.  28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519 (1982).

[3] Page citations refer to the CM/ECF page numbers, unless otherwise noted.

(Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2).  On July 10, 2014, Petitioner was indicted on one (1) count of marijuana possession having a weight of more than four (4) pounds and four (4) counts of unlawful possession of drug paraphernalia.  Answer (Doc. 16), *State v. Morris*, CR2014-00380, Indictment at 3–4 (Cochise Cnty. Super. Ct. July 10, 2014) (Exh. "A") (Doc. 16-1).   On November 2, 2015, following a jury trial, Petitioner was found guilty of all charges.[4]   Answer (Doc. 21), *State v. Morris*, No. SO200CR291400380, Minute Entry at 96–99 (Cochise Cnty. Super. Ct. Nov. 2, 2015) (Exh. "L") (Doc. 16-1).  On December 3, 2015, Petitioner was sentenced to a mitigated term of imprisonment of 10.5 years on the possession count and three (3) years of supervised probation on each of the paraphernalia counts—each probation term was to be served concurrently with one another and consecutively to the possession term.  Answer (Doc. 16), *State v. Morris*, No. CR201400380, Sentence of Imprisonment/Sentence of Probation at 105–109 (Cochise Cnty. Super. Ct. Nov. 30, 2015) (Exh. "M") (Doc. 16-1).

### B.  Suppression Motion and Special Action

On August 5, 2015, defense counsel filed a motion to suppress pursuant to *Franks*[5] and A.R.S. § 13-3914(C).  Answer (Doc. 16), Def.'s Mot. to Suppress Pursuant to *Franks* and A.R.S. § 13-3914(C), *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 5, 2015) (Exh. "G") (Doc. 16-1).  Defendant sought suppression of "any and all evidence collected pursuant to the search warrant issued by J.P.5 in this matter."  *Id.* at 62. The State filed its response and Defendant replied.  *See* Answer (Doc. 16), State's Resp. to Mot. to Suppress, *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 5, 2015) (Exh. "HH") (Doc. 16-1); Answer (Doc. 16), Def.'s Reply Re: Mot. to Suppress, *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 5, 2015) (Exh. "I") (Doc. 16-1).  The trial court held hearings on the motion and the parties presented witness testimony and oral argument.   *See* Answer (Doc. 16), *State v. Morris*, No.

---

[4] Petitioner was found not guilty of two (2) counts of possession that did not appear in the May 29, 2018, indictment.

[5] *Franks v. Delaware*, 438 U.S. 154 (1978).

1    S0200CR201400380, Minute Entry: Suppression Hr'g (Cochise Cnty. Super. Ct. Sept. 11,

2    2015) (Exh. "J") (Doc. 16-1); Answer (Doc. 16), *State v. Morris*, No. S0200CR201400380,

3    Minute Entry: Suppression Hr'g (Day 2) (Cochise Cnty. Super. Ct. Sept. 17, 2015) (Exh.

4    K") (Doc. 16-1).  The court denied Defendant's motion.  Answer (Doc. 16), Exh. "K" at

5    90.

6         On September 22, 2015, counsel for Petitioner filed a Petition for Special Action to

7    the Arizona Court of Appeals asserting three (3) issues for review.  *See* Answer (Doc. 16),

8    Petr.'s Pet. for Special Action, *Morris v. State*, No. 2 CA-CR 2015-0062 (Ariz. Ct. App.

9    Sept. 22, 2015) (Exh. "GG") (Doc. 16-8).  Petitioner sought review of the trial judge's

10   decisions to 1) deny Defendant's requests for disclosure of a photograph, its relevant

11   metadata, and cellular telephone of Deputy Clark for expert analysis;   2) deny the

12   production of a transcript of the suppression hearing for Defendant's use at trial; and 3)

13   deny Defendant's request for investigative services.  *See id.*  Following briefing, on

14   October 14, 2015, the Arizona Court of Appeals declined to accept jurisdiction.  Answer

15   (Doc. 16), *Morris v. State*, No. 2 CA-CR 2015-0062 (Ariz. Ct. App. Oct. 14, 2015) (Exh.

16   "JJ") Doc. 16-9); *see also id.*, State's Resp. (Exh. "HH") & Petr.'s Reply (Exh. "II") (Doc.

17   16-9).

18        On October 19, 2015, Petitioner sought review of the appellate court's denial of

19   special action jurisdiction.  Resp.'s Suppl. Exhs. (Doc. 17), Petr.'s Pet. for Review of A

20   special Action Decision of the Court of Appeals, *Morris v. State*, No. CR-15-0356-PR

21   (Ariz. Oct. 19, 2015) (Exh. "KK") (Doc. 17-1).  On April 13, 2016, the Arizona Supreme

22   Court denied Petitioner's petition.  Resp.'s Suppl. Exhs. (Doc. 17), *Morris v. State*, No.

23   CR-15-0356-PR, Memorandum (Ariz. Apr. 13, 2016) (Doc. 17-1).

24        **C.  Direct Appeal**

25        On March 29, 2017, counsel for Petitioner filed an Opening Brief asserting six (6)

26   issues for review.  *See* Answer (Doc. 16), Appellant's Opening Br., *State v. Morris*, No. 2

27   CA-CR 2015-0458 (Ariz. Ct. App. Mar. 29, 2017) (Exh. "O") (Doc. 16-1).  First, Petitioner

28   asserted that law enforcement did not have good cause to conduct a nighttime search,

thereby violating Petitioner's Fourth Amendment rights.[6]  *Id.*, Exh. "O" at 126, 139–52. Based on this alleged violation, Petitioner further asserted that the trial court erred in denying his motion to suppress.  *Id.*  Next, Petitioner argued that Cochise County Sheriff's Detective Hudson mislead the judicial officer during the search warrant application in violation of Petitioner's Fourth Amendment rights.  Answer (Doc. 16), Exh. "O" at 126, 153–65.   Third, Petitioner asserted that the trial court judge "showed a deep-seated favoritism towards the issuing justice" which resulted in a violation of Petitioner's due process rights.  *Id.*, Exh. "O" at 126, 166–70.  Fourth, Petitioner urged that the authorization for a nighttime warrant was an amendment to the original search warrant; however, there was no recording or other evidence that the later request was made under oath, thereby violating Petitioner's Fourth Amendment rights.  Answer (Doc. 16), Appellant's Opening Br. at 126, 170–72, *State v. Morris*, No. 2 CA-CR 2015-0458 (Ariz. Ct. App. Mar. 29, 2017) (Exh. "O") (Doc. 16-1).   Fifth, Petitioner asserted that the trial court erred in admitting "irrelevant and prejudicial evidence" that should have been precluded pursuant to Rules 403 and 404(b), Arizona Rules of Evidence.  *Id.*, Exh. "O" at 126, 172–83. Petitioner also raised that the trial court agreed to give a limiting instruction; however, no such instruction was given.  *Id.*  Finally, Petitioner argued that the trial court erred "when it precluded the Defense from calling Patrick Callahan as a witness because he was disclosed one day late."  Answer (Doc. 16), Exh. "O" at 126, 183–93.

On May 29, 2018, the Arizona Court of Appeals affirmed Petitioner's convictions and sentence.  *See* Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2).  The court of appeals addressed each of Petitioner's allegations in turn.  *See id.*  As an initial matter, the appellate court noted that it "review[s] a trial court's ruling on a motion to suppress evidence for an abuse of discretion if it involves a discretionary issue, but review[s] constitutional issues and purely legal issues de novo."  Answer (Doc. 16), Exh. "R" at 79 (quoting *State v. Moody*, 94 P.3d 1119, 1140 (Ariz. 2004)).  Regarding Petitioner claim that the nighttime

---

[6] Petitioner also asserted a violation of his rights pursuant to the Arizona State Constitution.

execution for the search warrant violated is Fourth Amendment rights, as well as his rights pursuant to article II, § 8 of the Arizona Constitution, the appellate court observed that it was unpersuaded by the State's argument regarding the existence of good cause to support a nighttime search warrant. *Id.*, Exh. "R" at 80. The appellate court observed that "[b]elow, Morris argued only that the nighttime search violated § 13-3917[,] [but] [o]n appeal, he additionally contends it violated the Arizona and federal constitutions, acknowledging that his failure to raise those issues in the trial court has waived all but fundamental error on appeal." Answer (Doc. 16), Exh. "R" at 81 (citing *State v. Henderson*, 115 P.3d 601, 607 (Ariz. 2005). Upon review of the cases relied on by Petitioner, the appellate court "reject[ed] Morris's argument that a nighttime SWAT team search, at least on the facts before [it], 'requires higher justification beyond mere probable cause' to be reasonable under the Fourth Amendment." Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision at 83 (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2). It "conclude[d] the nighttime SWAT team execution of the search warrant here did not violate Morris's constitutional rights." *Id.* The appellate court also held that "although there was not good cause for the nighttime service of the warrant under § 13-3917, Morris ha[d] not demonstrated that statutory violation amounted to a violation of the Arizona Constitution." Answer (Doc. 16), Exh. "R" at 83.

Next, the appellate court considered "the validity of the search warrant on grounds that Hudson's telephonic request for nighttime service was not recorded, nor was there evidence that the request was made under oath or affirmation, in violation of the Fourth Amendment and Arizona statutes." *Id.*, Exh. "R" at 84 (internal quotations omitted). The appellate court determined that "[w]hile the Fourth Amendment specifically states that warrants must 'particularly describ[e] the place to be searched,' it does not say anything about the time for warrants to be served." *Id.*, Exh. "R" at 85 (citing U.S. Const. amend. VI) (2d alteration in original). The appellate court concluded that "Morris ha[d] not established that changing the time of service [wa]s 'tantamount to the issuance of a new warrant' under the Fourth Amendment . . . or any fundamental error on this ground."

1   Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision at 85 (Ariz.

2   Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2) (quoting *State v. Boniface*, 546 P.2d 843,

3   846 (Ariz. Ct. App. 1976).

4           Third, the appellate court considered Petitioner argument that "the evidence

5   resulting from the warrant should have been suppressed under *Franks*, 438 U.S. 154, . . .

6   because Detective Hudson 'fabricated, exaggerated, and misrepresented material

7   information' supporting the warrant." *Id.*, Exh. "R" at 85. The appellate court reviewed

8   the suppression hearing testimony of various witnesses and observed that "the testimony

9   and credibility of the witnesses was for the trial court to assess and resolve . . . as it did

10  here." *Id.*, Exh. "R" at 87 (citations omitted).The appellate concluded that Petitioner did

11  not meet his burden to demonstrate a *Franks* violation. *Id.*

12          Fourth, the appellate court considered Petitioner's contention that "the trial court

13  demonstrated bias in favor of the magistrate who issued the search warrant and therefore

14  its ruling on the motion to suppress violated the Due Process Clause of the Fourteenth

15  Amendment." Answer (Doc. 16), Exh. "R" at 87. The appellate court reviewed the

16  suppression hearing testimony. Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-

17  0458, Mem. Decision at 87–88 (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2). The

18  court observed that it had already held "that there was not good cause for the search warrant

19  to be served at night, yet this did not mandate suppressing the evidence at trial." *Id.*, Exh.

20  "R" at 88. The appellate court recognized that "even crediting Morris's view of the trial

21  judge's bias, we would not be able to conclude he was prejudiced." *Id.* (citations omitted).

22          Fifth, the appellate court reviewed the trial court's rulings on the admission of

23  certain evidence which Petitioner challenged pursuant to Rules 403 and 404(b), Arizona

24  Rules of Evidence. Answer (Doc. 16), Exh. "R" at 88–91. The appellate found some

25  references "fleeting" and their prejudice negligible, and did not find error with the

26  remainder. *Id.*

27          Finally, the appellate court considered the preclusion of defense witness Patrick

28  Callahan due to late disclosure and the finding that his proffered testimony was hearsay.

Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision at 92–93 (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2).  The court observed that "[e]ven if Callahan's testimony about Lang's plan [to pin everything on Morris] could be said to be relevant without any evidence that Lang carried out that plan or even had the opportunity to do so, the trial court's exclusion of the testimony would be at most harmless error." *Id.*, Exh. "R" at 93.  The appellate court noted that "[t]he charges against Morris were based on his possession of drugs and paraphernalia found in the trailer he admitted owning." *Id.* The appellate court held that "[u]nder these circumstances, we are confident beyond a reasonable doubt that the exclusion of Callahan's testimony could have had no influence on the jury's verdict." *Id.* (citations omitted).

Accordingly, the appellate court affirmed Petitioner's convictions and sentences. Answer (Doc. 16), Exh. "R" at 94.  Petitioner did not seek review with the Arizona Supreme Court.  *See* Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mandate (Ariz. Ct. App. Nov. 16, 2018) (Exh. "S") (Doc. 16-2).

### D. Post-Conviction Relief ("PCR") Proceeding

On August 27, 2018, Petitioner filed his Notice of PCR.  Answer (Doc. 16), Not. of PCR, *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 27, 2018) (Exh. "T") (Doc. 16-2).  On March 13, 2019, the court acknowledged receipt of Rule 32 counsel's Notice of Completion of Post-Conviction Review[7] and ordered that the record be forwarded to Petitioner.  Answer (Doc. 16), *State v. Morris*, No. CR201400380, Order Re: Not. of Completion of Record, Not. of Non-Filing of Suppl. Pet. Pursuant to Ariz. R. Crim. P. 32.4(d)(2)(a) (Cochise Cnty. Super. Ct. Mar. 13, 2019) (Exh. "U") (Doc. 16-2).

---

[7] The Arizona Supreme Court has held that in Rule 32 proceedings, where counsel concludes that the proceeding has no merit, "a pleading defendant has a right under Ariz. Const. art. 2 § 24 to file a *pro se* PCR petition." *Montgomery v. Sheldon (I)*, 889 P.2d 614. 618 (Ariz. 1995)  Subsequently, the Arizona Supreme Court affirmed this rule and reiterated:

If, after conscientiously searching the record for error, appointed counsel in a PCR proceeding finds no tenable issue and cannot proceed, the defendant is entitled to file a pro se PCR.

*State v. Smith*, 910 P.2d 1, 4 (Ariz. 1996).

On April 24, 2019, Plaintiff filed an "Omnibus Motion" seeking an extension of time to file a *pro se* petition, as well as other miscellaneous relief.  Answer (Doc. 16), Omnibus Mot. Respectfully Requesting an Ext. of Time to File a *pro se* Pet. for Review or Stay/Obeyance in Lieu That All Remedies are Exhausted to Move to the Higher Cts. Showing Good Cause and Remedies of 32.1(A),(E)1,2, and 3, (F) Specific Exceptions and Meritorious Reasons with Unconst. Inadequacies and Ineff. Assist. of Counsel Representation Rule 32.1, *State v. Morris*, No. CR2014-00380 (Cochise Cnty. Super. Ct. Apr. 24, 2019) (Exh. "V") (Doc. 16-2).  On May 17, 2019, the Rule 32 court acknowledged receipt of Petitioner's motion and its review of the same.  Answer (Doc. 16), *State v. Morris*, No. CR201400380, Order Denying/Order Dismissing (Cochise Cnty. Super. Ct. May 17, 2019) (Exh. "W") (Doc. 16-2).  The Rule 32 court found "that the Defendant ha[d] not specified how much time he wishes to be granted and his request is too general in nature." *Id.*  As such, the Rule 32 court denied Petitioner's request for additional time to file his *pro se* petition and dismissed his Rule 32 Petition for failure to state a colorable claim for relief. *Id.*

Petitioner did not file a petition for review in the Arizona court of Appeals.  Answer (Doc. 21), Case Information Sheet, Ariz. Court of Appeals, Div. 2 (Exh. "FF") (Doc. 16-8).

### E.  The Instant Habeas Proceeding

On July 30, 2020, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1).  Petitioner asserts four (4) grounds for relief.  First, Petitioner alleges a violation of his Fourth Amendment rights alleging an illegal search and seizure.  Petition (Doc. 1) at 6.  Second, Petitioner alleges a violation of the Due Process Clause of the Fifth and Fourteenth Amendments for an alleged failure to disclose evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  Petition (Doc. 1) at 7.  Third, Petitioner urges a violation of his Fifth Amendment right against self-incrimination and pursuant to *Miranda v. Arizona*, 384 U.S. 436, 444 (1996).  Petition (Doc. 1) at 8.  Fourth, Defendant claims his counsel was ineffective "due to State agency

interference and conflict of interest." *Id.* at 9.

On December 23, 2020, Respondents filed their Limited Answer (Doc. 16), and Petitioner replied (Doc. 18).

## II.     STATUTE OF LIMITATIONS

### A.     *Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)     the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 569 U.S. 383 (2013). On May 29,

2018, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on direct review. *See* Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision (Ariz. Ct. App. May 29, 2018) (Exh. "R") (Doc. 16-2). Petitioner did not seek review with the Arizona Supreme Court. *See* Answer (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mandate (Ariz. Ct. App. Nov. 16, 2018) (Exh. "S") (Doc. 16-2). Therefore, Petitioner's judgment became final on July 3, 2018, after the expiration of the thirty-five (35) day period to seek review in the Arizona Supreme Court. Ariz. R. Crim. P. 31.21(b)(2)(A) (a party has thirty (30) days in which to file a petition for review); Ariz. R. Crim. P. 1.3(a) ("[i]f a party may or must act within a specified time . . . five calendar days shall be added to the prescribed period.").

Pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent tolling, on July 3, 2019. *See White*, 281 F.3d at 924 ("[T]he question of when a conviction becomes final, so as to start the running of the statute of limitations under § 2244(d)(1)(A), is fundamentally different from the question of how long the statute of limitations is tolled under § 2244(d)(2)."). Petitioner filed his Petition (Doc. 1) on July 30, 2020. Therefore, absent tolling, the Petition (Doc. 1) is untimely.

### B. *Statutory Tolling of the Limitations Period*

The limitations period is tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 552 U.S. 3, 4 (2007). An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (collateral proceeding "determined" when the Arizona Supreme Court denied petition for review).

"[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'"

*Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004)).  Petitioner filed his Notice of Post-Conviction Relief on August 27, 2018. Answer (Doc. 16), Not. of PCR, *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 27, 2018) (Exh. "T") (Doc. 16-2).  Here, the statute of limitations ran for thirty-two (32) days[8] until Petitioner initiated his PCR petition by presenting his PCR notice to prison officials for mailing.  On May 17, 2019, the Rule 32 court dismissed Petitioner's petition for a failure to state a colorable claim for relief.  Answer (Doc. 16), *State v. Morris*, No. CR201400380, Order Denying/Order Dismissing (Cochise Cnty. Super. Ct. May 17, 2019) (Exh. "W") (Doc. 16-2).  Petitioner did not appeal this decision to the Arizona Court of Appeals.  As such, the Rule 32 court's order became final thirty-five (35) days later, on June 21, 2019.  *See* Ariz. R. Crim. P. 32.16(a)(1), 1.3(a).  Petitioner's time to seek habeas relief expired 333 days later on April 14, 2020; however, he did not file his Petition (Doc. 1) until July 30, 2020.  Accordingly, the Court finds, absent equitable tolling, Petitioner's Petition (Doc. 1) is untimely.

### C.    *Equitable Tolling of the Limitations Period*

The Supreme Court of the United States has held "that § 2244(d) is subject to equitable tolling in appropriate cases."  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  The Ninth Circuit Court of Appeals "will permit equitable tolling of AEDPA's limitations period only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quotations and citations omitted).  Moreover, Petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

[8] The statute of limitations ran from July 3, 2018 until August 4, 2018.  The prison mailbox rule directs that a *pro se* prisoner's federal habeas petition is deemed filed when "he hands it over to prison authorities" for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275–76 (1988).  Arizona also applies the prison mailbox rule to *pro se* filings.  *See State v. Rosario*, 987 P.2d 226, 228 (Ariz. Ct. App. 1999) (applying the prison mailbox rule to notice of post-conviction relief).  For Petitioner's trial and appellate filings, the Court has relied on the date the accepting court file stamped for ease of reference; however, for his post-conviction filings and calculating timeliness, the Court relies on the date on which Petitioner handed his documents over to prison authorities.

circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Holland*, 260 U.S. at 649 (quoting *Pace*).

Petitioner asserts that "the lack of written record, and the extraordinary circumstances due to fact that 'Covid 19', [sic] and being Quarentine [sic], Hard Lockdown which took its toll on this Whetstone Unite Tucson Complex" should excuse his untimely filing. Reply (Doc. 18) at 1. The Court finds that the circumstances surrounding the COVID-19 pandemic meet the "very high threshold" of establishing that extraordinary circumstances beyond Petitioner's control made it impossible for him to timely file a habeas petition *and* that those extraordinary circumstances were the cause of his untimeliness. *United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004). As such, Petitioner is entitled to equitable tolling and the Court will excuse the untimeliness of his habeas petition.

## III.   STANDARD OF REVIEW

### A.   *In General*

The federal courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*." 28 U.S.C. § 2254(a) (emphasis added). Moreover, a petition for habeas corpus by a person in state custody:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Correcting errors of state law is not the province of federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Ultimately, "[t]he statute's design is to 'further the principles of

comity, finality, and federalism.'" *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003)). Furthermore, this standard is difficult to meet and highly deferential "for evaluating state-court rulings, [and] . . . demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (citations and internal quotation marks omitted).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, mandates the standards for federal habeas review. *See* 28 U.S.C. § 2254. The "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Federal courts reviewing a petition for habeas corpus must "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007) (citing 28 U.S.C. § 2254(e)(1)). Moreover, on habeas review, the federal courts must consider whether the state court's determination was unreasonable, not merely incorrect. *Id.*, 550 U.S. at 473; *Gulbrandson v. Ryan*, 738 F.3d 976, 987 (9th Cir. 2013). Such a determination is unreasonable where a state court properly identifies the governing legal principles delineated by the Supreme Court, but when the court applies the principles to the facts before it, arrives at a different result. *See Harrington v. Richter*, 562 U.S. 86, (2011); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Casey v. Moore*, 386 F.3d 896, 905 (9th Cir. 2004). "AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Burt*, 571 U.S. at 19–20 (quoting *Harrington*, 562 U.S. at 103) (alterations in original).

### B.     *Exhaustion of State Remedies*

Prior to application for a writ of habeas corpus, a person in state custody must exhaust all of the remedies available in the State courts. 28 U.S.C. § 2254(b)(1)(A). This "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Rose v. Lundy*,

455 U.S. 509, 520 (1982).  As such, the exhaustion doctrine gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotations omitted).  Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings."  *Rose*, 455 U.S. at 518 (internal citations omitted).  This upholds the doctrine of comity which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."  *Id.* (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

Section 2254(c) provides that claims "shall not be deemed . . . exhausted" so long as the applicant "has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The fair presentation requirement mandates that a state prisoner must alert the state court "to the presence of a federal claim" in his petition, simply labeling a claim "federal" or expecting the state court to read beyond the four corners of the petition is insufficient.  *Baldwin v. Reese*, 541 U.S. 27, 31–33 (2004) (rejecting petitioner's assertion that his claim had been "fairly presented" because his brief in the state appeals court did not indicate that "he was complaining about a violation of federal law" and finding the justices' opportunity to read a lower court decision addressing the federal claims insufficient to support fair presentation); *Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds).  Furthermore, in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court."  *Baldwin*, 541 U.S. at 29.  "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the

state."  *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004) (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (9th ed. 1998)).

In Arizona, however, for non-capital cases "review need not be sought before the Arizona Supreme Court in order to exhaust state remedies."  *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *see also Crowell v. Knowles*, 483 F.Supp.2d 925 (D. Ariz. 2007); *Moreno v. Gonzalez*, 962 P.2d 205 (Ariz. 1998).  Additionally, the Supreme Court has further interpreted § 2254(c) to recognize that once the state courts have ruled upon a claim, it is not necessary for an applicant to seek collateral relief for the same issues already decided upon direct review.  *Castille v. Peoples*, 489 U.S. 346, 350 (1989).

## C.    *Procedural Default*

### **1.**  **In General**

"A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The Ninth Circuit Court of Appeals explained the difference between exhaustion and procedural default as follows:

> The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law.  In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred.  *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (internal quotation marks and citations omitted).  Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default.  *See Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002) ("A claim is procedurally defaulted 'if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'") (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

*Cassett v. Stewart*, 406 F.3d 614, 621 n.5 (9th Cir. 2005). "Together, exhaustion and procedural default promote federal-state comity." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022).

Thus, a prisoner's habeas petition may be precluded from federal review due to procedural default in two ways. First, where a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1 (citations omitted). In this circumstance, the federal court "must consider whether the claim could be pursued by any *presently available* state remedy." *Cassett*, 406 F.3d at 621 n.6 (quotations and citations omitted) (emphasis in original). Second, where the petitioner presented his claims to the state court, which denied relief based "on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 728. Federal courts are prohibited from review in such cases because they have "no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* This is true whether the state law basis is substantive or procedural. *Id.* (citations omitted).

In Arizona, a petitioner's claim may be procedurally defaulted where he has waived his right to present his claim to the state court "at trial or on appeal or in any previous collateral proceeding[.]" Ariz. R. Crim. P. 32.2(a)(3) (2022). If an asserted claim "raises a violation of a constitutional right that can only be waived knowingly, voluntarily and personally by the defendant[,]" such claim is not automatically precluded. *Id.* Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *see also Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002). The Ninth Circuit Court of Appeals recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett*, 406 F.3d at 622.

## 2.  Overcoming a Procedural Bar

Where a habeas petitioner's claims have been procedurally defaulted, a petitioner must show cause and actual prejudice to overcome the bar on federal review.  *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice); *see also Smith v. Murray*, 477 U.S. 527, 534 (1986) (recognizing "that a federal habeas court must evaluate appellate defaults under the same standards that apply when a defendant fails to preserve a claim at trial.").  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").  Actual prejudice requires a habeas petitioner to "show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Murray*, 477 U.S. at 494 (emphasis in original) (internal quotations omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts.  *Id.* at 494–96.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'"  *Coleman v. Thompson*, 501 U.S. 722 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrera v. Collins*, 506 U.S. 390, 404 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through

which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404.   Further, to demonstrate a fundamental miscarriage of justice, a habeas petitioner must "establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

## IV.   ANALYSIS

Respondents assert that "[e]ven if this Court should find Morris' petition timely, his claims are procedurally defaulted without excuse and/or are not cognizable in federal habeas." Answer (Doc. 16) at 7.  As discussed below, the Court agrees with Respondents, and finds Petitioner's claims either non-cognizable or procedurally defaulted.

### A.      Ground One: Fourth Amendment

Petitioner asserts that he was subject to an "[i]llegal search and seizure pursuant to *Franks* and A.R.S. § 13-3914(c)." Petition (Doc. 1) at 6.

In general, Fourth Amendment claims are not cognizable in this habeas corpus proceeding. *Stone v. Powell*, 428 U.S. 465, 494 (1976) ("where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").  "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citations omitted).  "[I]n the case of a typical Fourth Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to redetermine an issue that has no bearing on the basic justice of his incarceration." *Stone*, 428 U.S. at 491 n.31.  Additionally, "the exclusionary rule is a judicially created remedy rather than a personal constitutional right . . . [which is of] minimal utility . . . when sought to be applied to Fourth Amendment claims in a habeas proceeding." *Stone*, 428 U.S. at 494 n.37.  Additionally, as discussed in Section III.A., *supra*, this Court shall "entertain an

application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws of treaties of the United States*."  28 U.S.C. § 2254(a) (emphasis added).  Federal habeas corpus relief is not for the purpose of correcting errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Prior to trial, defense counsel filed a motion to suppress.  Answer (Doc. 16), Def.'s Mot. to Suppress Pursuant to *Franks* and A.R.S. § 13-3914(C), *State v. Morris*, No. CR201400380 (Cochise Cnty. Super. Ct. Aug. 5, 2015) (Exh. "G") (Doc. 16-1).  Defendant sought suppression of "any and all evidence collected pursuant to the search warrant issued by J.P.5 in this matter." *Id.* at 62.  Defendant argued that suppression was required because 1) there were "[n]o recording[s] of the telephonic proceedings leading to th[e] warrant . . . [and] the facts supporting the issuance of the warrant were not preserved"; 2) there was no "good cause" for a nighttime warrant; and 3) there was no probable cause for issuance of the search warrant.  *See* Answer (Doc. 16), Exh. "G."  The trial court held hearings on the motion and the parties presented witness testimony and oral argument.  *See* Answer (Doc. 16), *State v. Morris*, No. S0200CR201400380, Minute Entry: Suppression Hr'g (Cochise Cnty. Super. Ct. Sept. 11, 2015) (Exh. "J") (Doc. 16-1); Answer (Doc. 16), *State v. Morris*, No. S0200CR201400380, Minute Entry: Suppression Hr'g (Day 2) (Cochise Cnty. Super. Ct. Sept. 17, 2015) (Exh. K") (Doc. 16-1).  The court denied Defendant's motion.  Answer (Doc. 16), Exh. "K" at 90.

On September 22, 2015, counsel for Petitioner filed a Petition for Special Action to the Arizona Court of Appeals asserting three (3) issues for review.  *See* Answer (Doc. 16), Petr.'s Pet. for Special Action, *Morris v. State*, No. 2 CA-CR 2015-0062 (Ariz. Ct. App. Sept. 22, 2015) (Exh. "GG") (Doc. 16-8).  Petitioner sought review of the trial judge's decisions to 1) deny Defendant's requests for disclosure of a photograph, its relevant metadata, and cellular telephone of Deputy Clark for expert analysis;  2) deny the production of a transcript of the suppression hearing for Defendant's use at trial; and 3) deny Defendant's request for investigative services.  *See id.*  Following briefing, on

1    October 14, 2015, the Arizona Court of Appeals declined to accept jurisdiction.  Answer
2    (Doc. 16), *Morris v. State*, No. 2 CA-CR 2015-0062 (Ariz. Ct. App. Oct. 14, 2015) (Exh.
3    "JJ") Doc. 16-9); *see also id.*, State's Resp. (Exh. "HH") & Petr.'s Reply (Exh. "II") (Doc.
4    16-9).

5            On October 19, 2015, Petitioner sought review of the appellate court's denial of
6    special action jurisdiction.  Resp.'s Suppl. Exhs. (Doc. 17), Petr.'s Pet. for Review of A
7    special Action Decision of the Court of Appeals, *Morris v. State*, No. CR-15-0356-PR
8    (Ariz. Oct. 19, 2015) (Exh. "KK") (Doc. 17-1).  On April 13, 2016, the Arizona Supreme
9    Court denied Petitioner's petition.  Resp.'s Suppl. Exhs. (Doc. 17), *Morris v. State*, No.
10   CR-15-0356-PR, Memorandum (Ariz. Apr. 13, 2016) (Doc. 17-1).

11           On March 29, 2017, counsel for Petitioner filed an Opening Brief asserting six (6)
12   issues for review focused primarily on the trial court's denial of his motion to suppress.
13   *See* Answer (Doc. 16), Appellant's Opening Br., *State v. Morris*, No. 2 CA-CR 2015-0458
14   (Ariz. Ct. App. Mar. 29, 2017) (Exh. "O") (Doc. 16-1).  On May 29, 2018, the Arizona
15   Court of Appeals affirmed Petitioner's convictions and sentence.  *See* Answer (Doc. 16),
16   *State v. Morris*, No. 2 CA-CR 2015-0458, Mem. Decision (Ariz. Ct. App. May 29, 2018)
17   (Exh. "R") (Doc. 16-2).  The court of appeals addressed each of Petitioner's allegations in
18   turn.  *See id.*  Petitioner did not seek review with the Arizona Supreme Court.  *See* Answer
19   (Doc. 16), *State v. Morris*, No. 2 CA-CR 2015-0458, Mandate (Ariz. Ct. App. Nov. 16,
20   2018) (Exh. "S") (Doc. 16-2).

21           Based on the foregoing, the Court finds that Petitioner had a full and fair opportunity
22   to litigate any alleged Fourth Amendment violation in the state courts.  Accordingly, the
23   Court finds Petitioner's claim precluded upon habeas review.  *See Stone*, 428 U.S. at 494.

24       **A.    Grounds Two Through Four—Procedural Default**

25           In Ground Two, Petitioner asserts that his due process rights were violated based
26   upon the non-disclosure of *Brady*[9] material.[10]  Petition (Doc. 1) at 7.  In Ground Three,

27   _____

28           [9] *Brady v. Maryland*, 373 U.S. 83 (1963).

             [10] Petitioner does not specify what *Brady* material the State failed to disclose aside from a

Petitioner urges that his Fifth Amendment right against self-incrimination was violated, because law enforcement did not read him his *Miranda*[11] rights prior to questioning.  *Id.* at 8.  In Ground Four, Petitioner alleges ineffective assistance of trial counsel based upon "state agency interference" and alleged "conflict of interest."[12]  *Id.* at 9.

Here, Petitioner did not present any of these claims to the State courts.  As discussed in Section III.B., *supra*, prior to bringing a claim to federal court, a habeas petitioner must first present claims to each appropriate state court.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (in order to "fairly present" one's claims, the prisoner must do so "in each appropriate state court").  As such, the claims would now be precluded and meet the technical requirements for exhaustion.  Ariz. R. Crim. P. 32.2(a)(3) (2018).  The Court finds Petitioner's claims Two through Four are procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) ("petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred").

Where a habeas petitioner's claims have been procedurally defaulted, the federal courts are prohibited from subsequent review unless the petitioner can show cause and actual prejudice as a result.  *Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that failure to raise claims in state appellate proceeding barred federal habeas review unless petitioner demonstrated cause and prejudice).  Petitioner has not met his burden to show either cause or actual prejudice.  *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (Petitioner "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original) (internal quotations omitted); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause

---

photograph that was litigated in the suppression motion.  *See* Petition (Doc. 1) at 7, 19–22.

[11] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[12] The Court notes that Petitioner does not seem to be dissatisfied with counsel's representation.  Rather, he asserts that various individuals and agencies attempted to hamper counsel's ability to litigate his case.  *See* Petition (Doc. 1) at 8, 29–30.

"for procedurally defaulting his claims[,] . . . [and as such,] there is no basis on which to address the merits of his claims."). Neither has Petitioner "establish[ed] by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B). As such, Petitioner has failed to meet the cause and prejudice standard or demonstrate a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 748 (citations and quotations omitted). Accordingly, Petitioner's claims regarding alleged due process, lack of *Miranda* warnings, and ineffective assistance of counsel are denied.

## V.      CONCLUSION

Based upon the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is untimely, but he has met his burden for equitable tolling. The Court further finds that Petitioner's claims are either non-cognizable or procedurally defaulted.

## VI.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-20-0322-TUC-JAS**.

. . .

. . .

. . .

- 23 -

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 28th day of April, 2023.

Eric J. Markovich
United States Magistrate Judge